UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10CV-7-H

NATIONAL TRUST FOR HISTORIC
PRESERVATION IN THE U.S., et al.                                    PLAINTIFFS

V.

FEDERAL HIGHWAY ADMINISTRATION, et al.                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This litigation arises following final approval by the Federal Highway Administration

("FHWA"), in consultation with the Indiana Department of Transportation ("INDOT"), and the

Kentucky Transportation Cabinet ("KYTC"),[1] of a selected proposal (the "Modified Selected

Alternative") for the Louisville-Southern Indiana Ohio River Bridges Project (the "Project").

The Project includes a Louisville downtown river crossing, an east-end river crossing, tolling

facilities to assist in financing, transportation management, and certain mitigation commitments.

Several parties have aligned themselves in opposition to the Project.  One of them, the

Coalition for the Advancement of Reasonable Transportation, Inc. ("CART"), has moved for a

preliminary injunction to prohibit the Defendants commencing certain pre-construction tree

clearance and other preconstruction activities.  Defendants have each opposed the motion.

The activity precipitating the current motion apparently arose after September 13, 2012,

when INDOT filed a Notice of Feature Construction Activity, informing the Court and the

parties that it intended to award contracts and commence work on planned tree clearing activities

---

[1] The Court will sometimes refer to FHWA, INDOT and KYTC collectively as the "Defendants."

essential for the commencement of construction of the east-end crossing.  Apparently, due to seasonal cutting restrictions, such tree clearing could only occur between August 16, 2012, and March 31, 2013.  INDOT intended to award a contract for this work on October 25, 2012, and to begin the work on or about January 15, 2013.

INDOT's action was not a surprise to anyone.  At a previous hearing, all parties to the case discussed INDOT's proposed contracting and construction schedule, as well as the briefing schedule on Plaintiffs' anticipated motions for a permanent injunction against the Project.  The Court anticipates that final adjudication of all issues in the case could be resolved prior to the commencement of any substantial construction activity.  Such briefing would also involve full availability and reliance upon the final administrative record in the case.

I.

As a general matter, the standard for addressing a motion for preliminary injunction is well known.  Plaintiffs must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable injury in the absence of relief; (3) the balance of the equities favor injunction; and (4) an injunction is in the public interest.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).  No one factor is dispositive in a court's inquiry, because "the weakness of the showing regarding one factor may be overborne by the strength of the others."  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  A preliminary injunction is an extraordinary remedy designed to preserve the relative status quo of the parties.  *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009).

Consideration of injunctive relief is complicated here because CART's motion raises

questions about the FHWA's agency approval of the Modified Selected Alternative for the Project. The Administrative Procedures Act ("APA"), 5 U.S.C. § 706 likely governs any review of agency decisions in connection with that approval. Under the APA, the scope of any judicial review is limited to the administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). The standard of any review is ordinarily highly deferential. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).

As a general matter, this means that the reviewing court should affirm the agency decision unless that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Overton Park*, 401 U.S. at 414; *Northeast Ohio Reg'l Sewer Dist. v. U.S. E.P.A.,* 411 F.3d 726, 731 (6th Cir. 2005). The Court must apply these general rules to particular circumstances, especially those which may be argued at a later time. For the moment, however, these rules place a particularly high burden on CART to make convincing arguments why the Project should stop now.

## II.

At this preliminary stage, CART argues that it is entitled to injunction because (1) the Project violates the Endangered Species Act ("ESA"); (2) the Project violates the Federal Highway Act ("FHA") prohibition on federal participation in toll facilities; (3) the Project will intentionally discriminate against racial minorities in violation of Title VI of the Civil Rights Act; (4) the Project threatens water quality in the Louisville area; and (5) the Project threatens air quality in the Louisville area. The Court will consider each claim in turn.

## A.

Preliminarily, the Court will address several old arching themes which tend to undermine

CART's arguments on all issues.  First, the work which CART seeks to enjoin now involves a minuscule segment of the overall Project.  Work on substantial elements of the Project are unlikely to commence until after the Court has issued a final and permanent ruling on all issues, as opposed to a preliminary one.  Consequently, consideration of those issues concerning a potential overall affect of the Project are somewhat premature.  As a general matter, the work INDOT contemplates now will not constitute irreparable action or injury as to most of the issues raised.  And, all the parties and the public are better served by a final and permanent resolution of these issues.

Second, Plaintiffs' motion is handicapped by the lack of opportunity to review a final and complete administrative record.  Certainly, all parties and the public are better served by the Court making final decisions based on a thorough review of the complete record, rather than preliminary decisions from a non-existent record.  This is particularly true where CART questions an agency judgment based on the final administrative record.

Third, to the extent that CART argues that they or others are irreparably damaged by Defendants' expenditure of taxpayer funds prior to a final judicial resolution, this is simply not a valid consideration at this time.  Any governmental entity must bear the risk that taxpayer funds might be misspent or wasted on a project which is either ill-conceived or which may ultimately be halted by court order.  However, these possibilities are very seldom reason enough to halt work on a preliminary basis to, in effect, protect public officials from their alleged own bad judgment.

Those reasons alone could be sufficient to deny the pending motion.

4

B.

CART's first substantive argument is that these preliminary construction activities will

irreparably damage the summer maternity habitat of the Indiana Bat and the habitat of the Gray

Bat, both of which are each listed as an endangered species of the ESA.  In response to its ESA

obligations, Defendants and the United States Fish and Wildlife Service ("USFWS") have issued

an "incidental take statement" which describes the Project's potential impact on these species.

CART has not made any creditable arguments that the Project's impact on these species is more

than incidental or that the USFWS has violated any of its obligations in describing it.  The Court

will have an opportunity to revisit this issue, if necessary.  For now, however, the Court finds no

actual evidence that these preliminary construction activities will irreparably or unlawfully affect

the Indiana Bat and the Gray Bat.

C.

Next, CART argues that the Project's finance plan, which anticipates the use of tolling

agreements, violates the "freedom from tolls" provision of 23 U.S.C. § 301.  CART says that the

Defendants' plans for tolls are also unlawful, because the tolls would tax citizens twice for the

Project and the length of the tolls and their positions will burden "two generations of citizens."

Defendants have made a strong argument to the contrary.  They argue that the Federal

Aid Highway Program ("FAHP") permits federal participation in some toll roads, bridges,

tunnels and ferries.  *See* 23 U.S.C. § 129.  Under the provisions of § 129(a), the Secretary of

Transportation is authorized to participate in toll projects involving the initial construction of

non-interstate toll highways, bridges and tunnels and in toll projects involving reconstruction or

replacement of existing free interstate and non-interstate bridges and tunnels.  They argue that

the I-65 downtown bridges qualify as a project to reconstruct and expand the capacity of an

existing interstate toll free facility under 23 U.S.C. § 129(a)(1)(C) .  Further, the east-end bridge

qualifies as a project for the initial construction of a non-interstate bridge under 23 U.S.C. §

129(a)(1)(A).

Although the Court's view at this time is necessarily preliminary, it cannot yet conclude

that CART is likely to succeed on its arguments.  Moreover, the Court will have plenty of

opportunity to consider these arguments in more depth before the Project commences in full.

Therefore, the current activity does not amount to an irreparable injury to any of the parties in

this lawsuit.

D.

Plaintiffs' final three arguments concerning intentional discrimination, danger to area

water quality and danger to area air quality fail for similar reasons addressed at the outset of this

discussion.  INDOT's preliminary work does not injure irreparably in the way CART claims.

There is no reason for the Court to halt preliminary work when it will have an opportunity to

address these issues based on a full record before any substantial construction commences.

Moreover, Defendants have strong enough arguments on the facts and law to pre-close any

preliminary consideration against them.  To address these issues now would be premature where

CART has not demonstrated a stronger likelihood of success.

III.

The essence of a motion for preliminary injunction is that court action is necessary to

avoid irreparable injury to a party or the public and to preserve the status quo.

Here, the Court concludes that immediate court action is unnecessary for any of these

6

reasons.  INDOT's preliminary construction activities do not substantially alter the Project's status; they do not irreparably damage the property or legal rights of any party, particularly CART's.

CART's motion and Defendants' responses raised many issues in their combined some 200 pages of briefing.  The Court has mentioned only a few in summary fashion, while many issues are not addressed at all in this seven page memorandum.  No one should draw conclusions from this opinion concerning the importance of issues not mentioned or concerning any final conclusions the Court may draw.  The analysis set forth here is sufficient to decide the pending motion and nothing more is required.

In sum, the parties and the public will be best served by a final considered decision on all issues based upon a full administrative record.  Such a result will occur in due course.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that CART's motion for a preliminary injunction is DENIED.

cc:     Counsel of Record